UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT WELLS,

       Plaintiff,

                                                       Case No. 10-cv-10543

v.

                                                       Paul D. Borman
                                                       United States District Judge

CITY OF DEARBORN HEIGHTS, et al.,

                                                       R. Steven Whalen
       Defendants.                        United States Magistrate Judge

_____/

**OPINION AND ORDER GRANTING SUMMARY JUDGMENT FOR
DEFENDANT CITY OF DEARBORN HEIGHTS**

Robert Wells ("Plaintiff") filed the Complaint in this matter on February 9, 2010, alleging various tort claims arising out of his arrest during the execution of a search warrant at his home by the Dearborn Heights Police Department. (Dkt. No. 1). Defendants are the City of Dearborn Heights (the "City") and police officers Barr, Boljesic, Timothy Ciochon, Dehart, Gonzales, McManmon, Mark Meyers, Mitchell, Patrick Mueller, Nason, Christopher Pellerito, Poshadlo, Donald Riley, Robert Schnell, Corey Smith, and Rodney Smith (collectively, "Defendants"). Plaintiff alleged the following four counts: (1) Excessive force in violation of 42 U.S.C. § 1983; (2) Failure to train/supervise; (3) Assault and battery, and (4) Gross negligence.

Defendants filed a Motion for Summary Judgment on September 28, 2011. (Dkt. No. 51.) After briefing was completed, the Court held a hearing on this issue. Then on December 22, 2011, the Court entered an Opinion and Order granting Defendants' Motion for Summary Judgment and dismissing this action. (Dkt. No. 60). On August 26, 2013, the United States Court of Appeals for the Sixth Circuit reversed the grant of summary judgment in part and

remanded this action to this Court. *See Wells v. City of Dearborn Heights*, --- Fed. App. ----, No. 12-1051, 2013 WL 4504759 (6th Cir. Aug. 26, 2013).

Specifically, the Sixth Circuit reversed the Court's granting of summary judgment as to the §1983 claim and the state law claim of assault and battery against Defendant Mueller and only to the extent that the claims against him were based on the tasing of Plaintiff. The Sixth Circuit upheld the grant of summary judgment as to Defendants Ciochon and Pellerito on all counts.[1] The Sixth Circuit also reversed this Court's grant of summary judgment as to Defendant City of Dearborn Heights for the failure to train or supervise claim because the Court based that holding on Plaintiff's failure to state any constitutional claim. Therefore, the Sixth Circuit reasoned that because a constitutional claim against Defendant Mueller (based on the alleged tasing) was reinstated, so too, must the § 1983 claim against the City be reinstated.

At a status conference held on January 21, 2014, the Court, having previously heard argument on this claim against the City, granted summary judgment as to the City based on Defendants' previously filed and argued Motion for Summary Judgment. (*See* Dkt. Nos. 51, 58 & 59). The Court now issues this Opinion and Order in support of its grant of summary judgment in favor of the City.

## I. BACKGROUND

The Sixth Circuit Court of Appeals set forth a concise statement of facts in is August 26, 2013 Order. The Court therefore incorporates that recitation here:

---

[1] Plaintiff previously abandoned his claims against the thirteen other defendant police officers. (*See* Dkt. No. 58, Pl.'s Resp., at 10 n.1).

The incidents from which this suit arises occurred during the February 12, 2008, execution of a search warrant authorizing the search of Wells's home and seizure of, *inter alia*, all controlled substances, drug paraphernalia, "and any person(s) present at the residence." The officers conducting the search were provided with an incident-risk assessment, which rated the execution of the search warrant as "Risk Level 3 (High)" on a three-level risk scale. Specifically, it disclosed that Wells had a criminal history, including convictions for both assault with a deadly weapon and resisting and obstructing a police officer, and that his father, Randall Wells, who lived at the same residence, was on probation and had a suspected gang affiliation. In addition, the officers knew that there were two fairly large dogs inside the home. The officers approached the door, which was fortified with bars, announced their presence, and then made a forced entry using a battering ram. [Footnote omitted]

The events after this point are controverted. The various depositions of defendants-appellees indicate that officer Patrick Mueller entered the residence first, followed by officers Timothy Ciochon and Christopher Pellerito, and that one of the two dogs, a bulldog weighing approximately 80 pounds, came growling towards Mueller, teeth bared. According to defendants-appellees, Mueller shot the dog, only once, when it lunged at and tried to bite his leg. Mueller then claims that Wells became enraged at the shooting of the dog and approached Mueller. When Wells allegedly ignored Mueller's instructions to "drop to the ground" and pushed aside Mueller's outstretched hand, Mueller kicked him, but Wells continued to advance. Mueller recounts that he then kicked Wells a second time, knocking him to the ground. According to Mueller, once Wells was on the ground, Wells began to kick Mueller and tried to stand back up, prompting Mueller to tase Wells in the abdomen. Mueller claims that he handcuffed Wells only after Wells had been tased.

Wells tells a somewhat different story. According to him, upon entering the house Mueller ordered Wells and his father to drop tot he ground, and both of them immediately complied. Wells claims that he had difficulty lying down because of his cerebral palsy and that he first knelt on the floor and then placed his hand on a nearby love seat to help him get to the ground. In response, Mueller allegedly kneed Wells in the back, which put Wells completely on the ground, and proceeded to handcuff him. Next, while Wells and Randall claim they were lying complaint on the ground, Mueller shot the Welles' 80-pound American bulldog when it started barking at the officers. The dog allegedly made no physical contact with any officers, though the officers were kicking the dog to try to move it out of the way. Upon hearing Mueller shoot the bulldog, Wells turned his head, thinking his father had been shot. He also shouted, "you fucking pigs, you shot my dad," and then, upon seeing that it was the dog that had been shot, called the officers, "fucking pigs" several more times. While he was shouting at the officers, Wells also recounts that he was "turning my body around, all the way

> around[,] trying to get on my back and my butt just to see what was going on."
> Wells claims that as he was turning, Mueller tased him "right in my hip, right
> were my butt cheeks are." Though at one point in his deposition Wells stated that
> he "jumped to turn around," he later clarified that, at the time he was tased, he
> had merely rolled onto his side and lifted his head off the ground to look around.
> He further asserts that he was not flailing around or kicking at the officers and
> that at no point did he attempt to stand.
> After these events, Wells was taken outside and placed in a police car. A search
> of the house revealed marijuana, various drug paraphernalia, and methadone pills.
> Wells and his brother, Thomas, who was present in another room and also lived at
> the house, later pled guilty to possession of marijuana, and Randall pled guilty to
> possession of a controlled substance.

*Wells*, --- Fed. App. ---- , No. 12-1051, 2013 WL 4504759, at *1-2.

## II. STANDARD OF REVIEW

Defendants moved for summary judgment under Rule 56(c) of the Federal Rules of Civil Procedure. This rule provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." The moving party bears the initial burden of showing that there is no genuine issue of material fact. *Matsushita Electric Industrial Co., Ltd., et al. v. Zenith Radio Corp., et al.*, 475 U.S. 547, 587 (1986). Once this burden is met, the opposing party must produce some facts showing there is a genuine issue for trial. *Id*. If a rational trier of fact could not, based on the record as a whole, find in favor of the party opposing summary judgment, then summary judgment is granted in favor of the moving party. *Id*. The Court must view the facts and draw all reasonable inferences in favor of the non-moving party. The Court does not determine if all of the evidence favors one side or the other, but "whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

## III. ANALYSIS

Now before the Court are Plaintiff's claims that the City is liable for failure to adequately train and supervise its police officers.

First, Plaintiff asserts that the testimony that Defendant Mueller used a taser on Plaintiff while he was handcuffed evidences the City's failure to adequately train its police force.

For a municipality to be liable for a constitutional violation under § 1983, the violation must be a result of a policy or custom of the city. *Monell v. Dept. of Social Services*, 436 U.S. 658, 694 (1978). "That is to say, the liability of counties and other local governments under § 1983 depends solely on whether the plaintiff's constitutional rights have been violated as a result of a 'policy' or 'custom' attributable to the county or local government." *Holloway v. Brush*, 220 F.3d 767, 772 (6th Cir. 2000). "Only where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality – a 'policy' as defined by our prior cases – can a city be liable for such a failure under § 1983." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989).

Plaintiff has not indicated a specific City policy that caused his injury, instead relying on the singular act of Defendant Mueller as evidence of a policy or custom. However, a single alleged bad act is not sufficient to maintain a "policy or custom" claim against a municipality. Plaintiff must rather show "that the [defendant municipality] had a custom that was 'so widespread, permanent, and well settled as to have the force of law.'" *Jones v. Muskegon County*, 625 F.3d 935, 946 (6th Cir. 2010) (citation omitted). Plaintiff has failed to establish that the City had a custom of failing to train its officers that was "widespread, permanent, and well

settled." *Id*.

Plaintiff also argues that the City is liable under a failure to supervise theory, because the Defendant Officers admit that they did not receive regular performance evaluations. "To succeed on a failure to train or supervise claim, the plaintiff must prove the following: (1) the training or supervision was inadequate for the tasks performed; (2) the inadequacy was the result of the municipality's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury." *Ellis ex rel. Pendergrass v. Cleveland Mun. School Dist.*, 455 F.3d 690, 700 (6th Cir. 2006).

Defendants have presented evidence that Dearborn Heights police receive regular training regarding the proper use of force, and that the Defendant officers, who were members of the Dearborn Heights Tactical Response Unit ("TRU"), received specialized training on a monthly basis on the proper methods for executing a search warrant. (Defs.' Mot., Ex. 15, Gavin Aff. ¶¶ 4 and 7.) In response, Plaintiff merely relies on Defendants' admissions that they do not receive regular performance evaluations. Plaintiff does present any evidence that the Dearborn Heights police training on the proper use of force is inadequate, or that the specialized TRU training is inadequate. Accordingly, Plaintiff has failed to establish that the City's training or supervision was inadequate, or that the inadequacy was the result of the City's deliberate indifference. Therefore, Plaintiff's claims against the City of Dearborn Heights are dismissed.

## IV. CONCLUSION

For the reasons stated above and in accordance with its ruling from the bench on January 21, 2014, the Court will **GRANT** Defendants' Motion for Summary Judgment as to Plaintiff's §

1983 claim against Defendant City of Dearborn Heights and **DISMISS** that claim **WITH PREJUDICE**.

**SO ORDERED**.

                                                      s/Paul D. Borman  
                                                      PAUL D. BORMAN  
                                                      UNITED STATES DISTRICT JUDGE

Dated: January 22, 2014

### CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on January 22, 2014.

                                                      s/Deborah Tofil  
                                                      Case Manager